·MANKINS, Appellant,

v.

PAXTON, Executive Dir., Washington County Department
of Human Services, et al., Appellees.

[Cite as *Mankins v. Paxton* (2001), 142 Ohio App.3d 1.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–1152.

Decided March 20, 2001.

2

4

*Gary M. Smith,* for appellant.

*Lambert & McWhorter* and *Randall L. Lambert,* for appellee Washington County Department of Human Services.

*Betty D. Montgomery,* Attorney General, and *Ann E. Henkener,* Assistant Attorney General, for appellees Ohio Department of Job and Family Services and Jacqueline Romer Sensky, Director.

TYACK, Judge.

On January 11, 1999, Valerie Mankins filed suit against the director of the former Washington County Department of Human Services, Washington County, the then director of the former Ohio Department of Human Services, and the former Ohio Department of Human Services. The Ohio Department of Human Services is now known as the Ohio Department of Job and Family Services, and the Washington County Department of Human Services is now known as the Washington County Department of Job and Family Services. The lawsuit was filed in the Franklin County Court of Common Pleas. Mankins set forth claims for relief of violation of Section 1983, Title 42, U.S.Code, violation of Section 12131 *et seq.,* Title 42, U.S.Code (the Americans with Disabilities Act of 1990), violation of Section 504 of the Rehabilitation Act of 1973 (Section 794, Title 29, U.S.Code), breach of contract, violations of the Ohio Constitution, and violation of R.C. 5107.01 *et seq.* (Ohio Works First program). Mankins also sought review

of an administrative determination made pursuant to R.C. 5101.35. Declaratory, injunctive, and monetary relief was sought.[1]

After service of process, an answer was filed on behalf of the Washington County defendants. On February 26, 1999, counsel for the state defendants filed a motion to dismiss. On August 14, 2000, the trial court granted the motion to dismiss, finding that it lacked subject-matter jurisdiction over all of the claims. Due to the finding as to subject-matter jurisdiction, the trial court dismissed the lawsuit in its entirety.

Mankins ("appellant") has pursued a direct appeal, assigning a single error for our consideration:

"The trial court erred as matter of law in dismissing causes of action one through five and seven through nine of Ms. Mankins' complaint for lack of subject-matter jurisdiction since she did not fail to exhaust remedies and the trial court would still have jurisdiction over the remaining claims."

The trial court found that the essence of appellant's claims was that she was wrongly denied benefits under the Ohio Works First program. (Trial court decision at 7.) The trial court concluded that R.C. 5101.35 was an insurmountable impediment to jurisdiction of the court. *Id.* R.C. 5101.35 sets forth the appeals process from a denial of assistance under the Ohio Works First program.

The Ohio Department of Job and Family Services receives federal funding for the administration of the federal Temporary Assistance for Needy Families program ("TANF"). In Ohio, TANF is called Ohio Works First ("OWF"). In January 1998, appellant injured herself on the job. By April 1998, appellant could no longer work due to these injuries. She therefore applied for assistance through OWF in April 1998.

Under TANF, a state must reduce or terminate assistance to an individual who refuses to engage in work activities required under the law, subject to such good cause and other exceptions as the state may establish. Section 607(e), Title 42, U.S.Code. Pursuant to Section 608(b), Title 42, U.S.Code, Ohio has made it mandatory that a person wishing to receive assistance under OWF enter into a written self-sufficiency contract with the county department of job and family services. R.C. 5107.14. This contract sets forth the rights and responsibilities of the applicant for and participant in OWF, including work responsibilities. *Id.*

According to the complaint, Washington County required appellant to sign a boilerplate self-sufficiency contract that provided no services or assistance appellant needed in order to become economically self-sufficient. Appellant alleges that the county "ordered" her to work in a county manual labor crew, performing

---

1. We note that Mankins sought monetary damages against the county defendants only.

repair, maintenance and janitorial services. Such work was to begin May 11, 1998. In early May 1998, appellant's doctor permitted her to work on a limited basis. However, on May 7, 1998, appellant re-injured herself while working.[2] On May 8, 1998, appellant saw her doctor, who significantly restricted her work activities.

According to the complaint, appellant's doctor telephoned the county, informing it of appellant's restricted activities. Appellant believed that she had therefore verified her inability to work in May. In June 1998, Washington County sent notice to appellant proposing to sanction her OWF assistance for her failure to work in May. Appellant was sanctioned for her failure to work and for failing to establish good cause for such failure. Washington County determined that appellant failed to provide a written medical statement verifying illness. Appellant appealed to the state hearing bureau, and a state hearing officer affirmed the county's sanction. Appellant then appealed to the state office of legal services pursuant to R.C. 5101.35. On December 11, 1998, a hearing examiner affirmed the hearing officer's decision, finding the county's good-cause standard of "a medical statement is required to verify illness" could imply the need to submit written documentation.

Appellant averred in her complaint that the above actions have caused her to suffer irreparable injury to her constitutional and legal rights without adequate remedy at law and have caused her emotional and economic harm and personal injury. She therefore set forth the claims listed above.

Counsel for appellant apparently acknowledges that the trial court did not have jurisdiction over the sixth claim set forth in the complaint. The sixth claim was a purported administrative appeal of the December 11, 1998 decision made by the hearing examiner pursuant to R.C. 5101.35. At the time of the hearing examiner's decision, R.C. 5101.35(E) stated:

"(E) An appellant who disagrees with an administrative appeal decision of the director of human services or the director's designee issued under division (C) of this section may appeal from the decision to the court of common pleas pursuant to section 119.12 of the Revised Code. The appeal shall be governed by section 119.12 of the Revised Code *except that:*

"(1) *The person may appeal to the court of common pleas of the county in which the person resides, or to the court of common pleas of Franklin county if the person does not reside in this state.*"[3] (Emphasis added.)

---

**2.** It appears from the record that appellant had been engaged in other employment unrelated to the work assigned under OWF.

**3.** Current R.C. 5101.35(E) is the same except that it replaces the director of human services with the director of job and family services.

■ Appellant is a resident of Washington County; therefore, she had to appeal the director's decision to the Washington County Court of Common Pleas, not the Franklin County Court of Common Pleas. See *Richardson v. Ohio Dept. of Human Serv.* (May 23, 1991), Franklin App. No. 91AP–148, unreported, 1991 WL 96346. However, appellant asserts that the remaining claims could be pursued in Franklin County, given the fact that the state defendants are located here.

■ We begin with the standard applied to motions to dismiss. In order to grant a motion to dismiss, it must appear beyond doubt that the plaintiff can prove no set of facts entitling her to relief. *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 280, 649 N.E.2d 182, 184. In reviewing a motion to dismiss, the factual allegations in the complaint must be taken as true, and the complaining party must be afforded all reasonable inferences possibly derived therefrom. *Id.* Here, the trial court dismissed the entire complaint against all parties on the basis that it lacked subject-matter jurisdiction over the matters. In so concluding, the trial court cited *Fairview Gen. Hosp. v. Fletcher* (1992), 63 Ohio St.3d 146, 586 N.E.2d 80. For the reasons that follow, we find that the trial court erred in concluding that it lacked subject-matter jurisdiction over the claims.

■ In *Jones v. Chagrin Falls* (1997), 77 Ohio St.3d 456, 674 N.E.2d 1388, syllabus, the Supreme Court of Ohio held that the doctrine of failure to exhaust administrative remedies is not a jurisdictional defect to a declaratory judgment action: it is an affirmative defense that may be waived if not timely asserted and maintained. The trial court found, in essence, that appellant's claims could have been addressed in an administrative appeal to the Washington County Court of Common Pleas pursuant to R.C. 5101.35 and, therefore, it lacked subject-matter jurisdiction over the claims. However, as held in *Jones,* appellant's failure to exhaust any alleged administrative remedies is not a jurisdictional bar to the declaratory judgment action asserted against the state defendants.

In the case at bar, the state defendants raised only the affirmative defense of failure to exhaust administrative remedies as to appellant's sixth and eighth claims for relief. As indicated above, the sixth claim is not at issue in this appeal. In her eighth claim for relief, appellant sought, essentially, a declaration that her rights under R.C. Chapter 5107 (the statutes governing OWF) were violated. In their motion to dismiss, the state defendants contended that the trial court lacked subject-matter jurisdiction over appellant's claim for eligibility for OWF benefits because appellant had an adequate administrative remedy.

■■ First, we disagree with the state's assertion that appellant's eighth claim contains a jurisdictional defect. The eighth claim is a declaratory judgment

action over which the Franklin County Court of Common Pleas would otherwise have jurisdiction. The state asserts that appellant had an adequate remedy through the administrative appeals process. Again, the failure to exhaust administrative remedies is an affirmative defense. Normally, affirmative defenses require reference to materials outside the complaint and, therefore, cannot be raised by means of a Civ.R. 12(B)(6) motion to dismiss. *Loyer v. Turner* (1998), 129 Ohio App.3d 33, 35, 716 N.E.2d 1193, 1194. However, an exception exists where the existence of the affirmative defense is obvious from the face of the complaint. *Id.* See, also, *Esselburne v. Ohio Dept. of Agriculture* (1990), 64 Ohio App.3d 578, 580, 582 N.E.2d 48, 49–50.

■ As to appellant's eighth claim, the face of the complaint indicates that appellant did have an adequate administrative remedy regarding her participation in OWF by way of the appeals process set forth in R.C. 5101.35. Therefore, the trial court properly dismissed the eighth claim for relief as to the state defendants. However, we note that the reason for such dismissal is not lack of subject-matter jurisdiction; it is because declaratory judgment is not proper as to this claim given appellant's failure to exhaust administrative remedies. See, generally, *Schomaeker v. First Natl. Bank* (1981), 66 Ohio St.2d 304, 20 O.O.3d 285, 421 N.E.2d 530, paragraph three of the syllabus.

This takes us to appellant's remaining claims for relief. As stated above, the trial court erred in finding that it lacked subject-matter jurisdiction over the claims. Because the trial court did not lack subject-matter jurisdiction over the claims, it was error to dismiss the complaint as to all the defendants, as the county defendants did not move to dismiss the complaint.[4] Rather, the trial court should have determined whether the complaint failed to state a claim as to each of appellant's remaining claims against the state defendants.

■ In their motion to dismiss, the state defendants set forth their arguments as to why appellant's remaining claims should be dismissed for failure to state a claim. We will address each of appellant's remaining claims to determine whether they stated a claim. In her first claim for relief, appellant avers that the state defendants violated Section 1983, Title 42, U.S.Code ("Section 1983") by depriving her of due process. Section 1983 provides a remedy to persons whose federal rights have been violated by governmental officials. *Shirokey v. Marth* (1992), 63 Ohio St.3d 113, 116, 585 N.E.2d 407, 409–410. However, Section 1983 does not itself create any constitutional or substantive rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere. *Id.* It does not cover official conduct that violates only state

---

4. We also note that the county defendants did not raise failure to exhaust administrative remedies in their answer.

law. *Id.* Rather, Section 1983 is limited to deprivations of federal statutory and constitutional rights. *Id.* The elements of a Section 1983 claim are that the conduct in controversy must be committed by a person acting under color of state law, and the conduct must deprive the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Id.*

We note first that all of appellant's Section 1983 claims against the state (*i.e.*, the Ohio Department of Job and Family Services) fail to state a claim as the state is not a "person" for purposes of Section 1983. See *Will v. Michigan Dept. of State Police* (1989), 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45; *Hafer v. Melo* (1991), 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301; and *Shaper v. Tracy* (1994), 97 Ohio App.3d 760, 766, 647 N.E.2d 550, 553–554. Hence, we address the merits of appellant's Section 1983 claims only as to the director of the Ohio Department of Job and Family Services.

Appellant's first claim rests on the alleged deprivation of her procedural due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution. In a Section 1983 action that alleges violation of procedural due process rights, the existence of state remedies is relevant. *Shirokey* at 119, 585 N.E.2d at 411–412, quoting *Zinermon v. Burch* (1990), 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100, 113–114. The constitutional violation is not complete unless and until the state fails to provide due process, and it is necessary to ask what process the state provided and whether such process was constitutionally adequate. *Shirokey* at 119, 585 N.E.2d at 412.

Here, the state provided a constitutionally adequate process by way of the administrative appeals process. Appellant may disagree with the decisions made in such process; however, appellant had the ability to appeal such decisions through the court system pursuant to R.C. 5101.35 and 119.12. Appellant makes several arguments as to why the appeals process afforded was not meaningful or adequate. Such arguments are substantive contentions as to why her OWF benefits should not have been sanctioned. Such contentions could have been raised in the review process afforded by the state. As such, appellant has failed to state a claim under Section 1983 for an alleged deprivation of procedural due process rights, and this claim was properly dismissed against the state defendant(s).

Appellant's second claim for relief states that the actions complained of violated Section 1983 by depriving appellant of her right to equal protection. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution states that no state shall deny to any person the equal protection of the laws. It prevents a state from treating people differently under its laws on an arbitrary basis. *Harper v. Virginia State Bd. of Elections* (1966), 383 U.S.

663, 681, 86 S.Ct. 1079, 1089, 16 L.Ed.2d 169, 180–181. An equal protection claim challenges statutory classifications.

Under the Equal Protection Clause, a rational-basis analysis is normally used absent a fundamental interest or suspect class. *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 289, 595 N.E.2d 862, 866–867. Under the rational-basis test, it must be shown only that the differential treatment is rationally related to some legitimate state interest. *Id.* In the area of economics and social welfare, a state does not violate the Equal Protection Clause merely because the classifications made are imperfect. *Andolsek v. Kirtland* (1994), 99 Ohio App.3d 333, 336, 650 N.E.2d 911, 912–913. Rather, the varying treatment of different groups or persons is not violative of the Equal Protection Clause unless such treatment is so unrelated to any combination of legislative purposes that it can be concluded only that the legislature's actions were irrational. *Id.*, quoting *Vance v. Bradley* (1979), 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171, 176.

Appellant does not set forth in her complaint the alleged classification at issue. For example, appellant avers that she was required to work under the OWF; however, she does not aver that she was treated in this regard any differently from any other applicant or participant. Appellant avers that the defendants wrongly determined that her medical statement verifying injury was insufficient good cause. However, appellant does not aver that such determination would apply only to her case.

Appellant avers many illegal acts on the part of the county defendants. As to the state defendant(s), appellant merely contends that the state hearing officer deferred to the county's interpretation of the good-cause standards and that the state hearing examiner affirmed such decision, finding that a written medical statement could be required under the standard. Even taking the above as true, the allegations against the state defendant(s) do not state a claim under the Equal Protection Clause. There is no allegation, for example, that the director treated appellant or applied a statute or rule to appellant differently than she would any other person.

Given all of the above, appellant's second claim for relief failed to state a claim, and such claim was properly dismissed against the state defendant(s).

Appellant's third claim avers that she was deprived of rights, privileges, and/or immunities granted by federal law in violation of Section 1983. Again, appellant does not set forth which rights, privileges and/or immunities are at issue. We have already discussed appellant's constitutional claims under Section 1983. We are left with speculating as to which other federal rights are at issue. In regard to any claim that appellant was deprived of a property interest in the benefits under OWF and TANF, we note that such alleged deprivation involves

the procedural due process right to notice and a hearing. See *Cooperman v. Univ. Surgical Assoc., Inc.* (1987), 32 Ohio St.3d 191, 200, 513 N.E.2d 288, 297–298. To state a claim under Section 1983 for unauthorized property deprivations, a claimant must allege not only that he or she is legitimately entitled to the property but that he or she was deprived of such property without a meaningful opportunity to be heard. *Id.* at paragraph three of the syllabus.

As indicated previously, appellant was afforded a meaningful opportunity to be heard. Given all of the above, appellant's third claim for relief fails to state a claim and was properly dismissed as to the state defendant(s).

Appellant's fourth claim for relief asserts that the acts complained of constituted discrimination on the basis of her handicap and deprived her of a right to a reasonable accommodation in violation of Section 12131 *et seq.*, Title 42, U.S. Code, the Americans with Disabilities Act of 1990 ("ADA"). Section 12132 of the ADA states:

"* * * no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

We note first that the parties have raised the issue of the applicability of the United States Supreme Court's recent decision in *Bd. of Trustees of the Univ. of Alabama v. Garrett* (2001), 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866. *Garrett* is not on point. *Garrett* addressed the issue of the Eleventh Amendment to the United States Constitution and suits against the state *in federal court* for money damages under the ADA. The case at bar is a claim under the ADA in state court, filed against the state for injunctive and declaratory relief. Hence, the holding in *Garrett* is inapplicable to the present case. In addition, we note that *Garrett* involved suits by state employees against the state of Alabama for money damages for the failure to comply with Title I of the ADA. The Supreme Court found that such suits were barred by the Eleventh Amendment. It specifically declined to address the issue of whether Title II of the ADA (the provision at issue in the case at bar) was appropriate legislation under Section 5 of the Fourteenth Amendment.

Having found *Garrett* inapplicable to the case at bar, we now determine whether appellant's cause of action against the state under the ADA states a claim upon which relief can be granted. Appellant does not specifically indicate in her complaint what her handicap was. We assume that it was the injuries she had incurred at work. The state contends that appellant was not excluded from participation in OWF "by reason of such disability" as is required in order to state a claim under the ADA. Rather, the state asserts that appellant's benefits were sanctioned because she failed to show good cause for her failure to work.

The state argues that this standard is applied to everyone who participates in OWF regardless of any disability, and appellant has not asserted that her disability somehow prevented her from submitting a written medical statement.

 The state's arguments in this regard are persuasive. However, the above is not the only wrongdoing averred in the complaint. The complaint also avers that the county defendants required her to work under OWF despite her disability and that the state wrongly denied her appeal and affirmed such actions without considering the circumstances "as a whole." Appellant contends, in essence, that from the beginning she should not have been required to work due to her disability. These acts could be prohibited under the ADA. Thus, appellant has stated a claim against the state for declaratory/injunctive relief under the ADA. Therefore, the trial court erred in dismissing appellant's fourth claim for relief against the state.

Appellant's fifth claim for relief asserts that the state violated Section 504 of the Rehabilitation Act of 1973. Section 794(a), Title 29, U.S.Code states:

"No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance * * *."

The state sets forth the same arguments against appellant's fifth claim that are asserted against appellant's ADA claim. Our analysis set forth above for appellant's ADA claim applies equally to appellant's claim under the Rehabilitation Act. Accordingly, we find that appellant has stated a claim under the Rehabilitation Act against the state for declaratory/injunctive relief.

In her seventh claim for relief, appellant asserts that the extent of discretion and substantive authority delegated to the county defendants by H.B. No. 408 violates the separation of powers doctrine, the due course of law provision and other provisions of the Ohio Constitution. H.B. No. 408 encompasses the governing statutes for OWF. The complaint does not specifically indicate what the unconstitutional delegation of authority entails. However, from the facts averred in the complaint, we can surmise that appellant finds fault with the authority counties have to adopt good-cause standards for the failure to work and the state's authority to find that participants have not met such standards.

The Department of Job and Family Services ("department") administers the OWF. R.C. 5107.03. The department adopts rules to implement R.C. Chapter 5107, and the rules governing eligibility and participant requirements are adopted in accordance with R.C. Chapter 119. R.C. 5107.05. Such rules must specify, establish, or govern the requirements for initial and continued eligibility for

OWF. R.C. 5107.05(A)(3). Under R.C. 5107.16(B), each county department must establish standards for the determination of good cause for failure or refusal to comply in full with provisions of a self-sufficiency contract. When a state hearing or administrative appeal under R.C. 5101.35(B) or (C) is held regarding a sanction, the hearing officer, director, or the director's designee shall base the decision on the county's standards of good cause, if the county provides the hearing officer, director, or director's designee with a copy of such good-cause standards.

Apparently, the Washington County Department of Job and Family Services requires a "medical statement to verify illness," and such requirement has been interpreted to require a written medical statement. Appellant seems to aver in her complaint that the legislature has unconstitutionally delegated authority to county departments to make rules as to good-cause standards, thereby violating the separation of powers doctrine of the Ohio Constitution.

We note first that statutes are presumed to be constitutional unless shown beyond reasonable doubt to violate a constitutional provision. *Fabrey v. McDonald Police Dept.* (1994), 70 Ohio St.3d 351, 352, 639 N.E.2d 31, 32–33. The doctrine of separation of powers is implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government. *S. Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 159, 28 OBR 250, 251–252, 503 N.E.2d 136, 138.

The General Assembly is precluded from delegating its legislative function; however, the General Assembly can delegate discretionary functions to administrative bodies so that they can apply the law to various sets of facts or circumstances. *Blue Cross v. Ratchford* (1980), 64 Ohio St.2d 256, 259, 18 O.O.3d 450, 452, 416 N.E.2d 614, 617. A statute does not unconstitutionally delegate legislative power if it establishes, through legislative policy and such standards as are practical, an intelligible principle to which the administrative officer or body must conform and further establishes a procedure whereby exercise of the discretion can be reviewed effectively. *Id.* at syllabus.

Here, the separation of powers doctrine has not been violated. R .C. 5107.01 sets forth the legislative policy behind OWF:

"(A) The Ohio general assembly hereby states the following beliefs with regard to the Ohio works first program:

"(1) That the first priority for minor heads of household and adults participating in the program is to work, which includes keeping an employer's schedule and satisfying the employer's work requirements, and to develop marketable skills.

"(2) That many minor heads of household and adults participating in the program need to complete high school or receive training for an occupation in order to qualify for employment."

In addition, there are sufficient practical standards to which the administrative body must conform. For example, as to the specific issue presented, R.C. 5107.26 states:

"(C) No assistance group member shall lose or be denied eligibility to participate in Ohio works first pursuant to division (B) of this section if * * * the county department of job and family services certifies that the member * * * terminated the employment with just cause."

Just cause includes the following:

"(3) Employment that has become unsuitable due to any of the following:

"* * *

"(d) The member * * * is physically or mentally unfit to perform the employment, as documented by medical evidence or by reliable information from other sources."

Further, the legislature has established a procedure whereby the departments' discretion can be reviewed effectively by way of the administrative review process and through the court system pursuant to R.C. 5101.35.

Given all of the above, there has been no unconstitutional delegation of legislative authority to the department or county departments and, therefore, H.B. No. 408 has not violated the separation of powers doctrine.

█ Appellant also contends that H.B. No. 408 violates the due course of law provision. The "due course of law" provision of the Ohio Constitution is the equivalent of the due process of law provision found in the Fourteenth Amendment to the United States Constitution. *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 422, 633 N.E.2d 504, 510–511. As discussed previously, appellant has not stated a claim under the Due Process Clause of the Fourteenth Amendment.

Given all of the above, appellant has failed to state a claim under her seventh claim for relief, and the trial court properly dismissed such claim.

Appellant's ninth claim for relief was not asserted against the state defendants.

In summary, the complaint failed to state a claim against the state defendant(s) as to the first, second, third, seventh, and eighth claims for relief, and these claims were properly dismissed on such grounds. The complaint did state a claim against the state defendant(s) as to the fourth and fifth claims for relief (claims under the ADA and the Rehabilitation Act of 1973, respectively), and the trial court erred in dismissing those claims. Accordingly, appellant's assignment of

error is sustained in part and overruled in part. We note that because the trial court erred in concluding that it was without subject-matter jurisdiction over all of the claims, each claim for relief still exists against the county defendants.

Appellant's assignment of error is sustained in part and overruled in part. The judgment of the Franklin County Court of Common Pleas is reversed in part and affirmed in part, and this cause is remanded to that court to conduct further appropriate proceedings.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

DESHLER and LAZARUS, JJ., concur.